UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
—————————————————————————————

G. HOGAN[1],

                              Plaintiff,

v.                                                          CASE # 19-cv-00919

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
—————————————————————————————

APPEARANCES:                                 OF COUNSEL:

LAW OFFICES OF KENNETH HILLER         JUSTIN DAVID JONES, ESQ.
 Counsel for Plaintiff                              KENNETH R. HILLER, ESQ.
6000 North Bailey Ave
Suite 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.            DENNIS J. CANNING, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   FRANCIS D. TANKARD, ESQ.
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative

---

[1] In accordance with Standing Order in November 2020, to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff by first name and last initial.

record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

I.      **RELEVANT BACKGROUND**

        A.      **Factual Background**

        Plaintiff was born on September 28, 1964 and has less than a high school education. (Tr. 683, 708). Generally, plaintiff's alleged disability consists of osteoarthritis, posttraumatic stress disorder, Hepatitis C, depression, and anxiety. (Tr. 707). His alleged onset date of disability is January 1, 2014. (Tr. 683). His date last insured is June 30, 2018. (Tr. 663).

        B.      **Procedural History**

        On December 13, 2015, plaintiff applied for a period of Disability Insurance Benefits (SSD) under Title II of the Social Security Act and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. (Tr. 644-662). Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge (ALJ). On April 19, 2018 plaintiff appeared before the ALJ, Bryce Baird. (Tr. 503-551). On June 19, 2018, ALJ Baird issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 7-24). On May 14, 2019, the Appeals Council (AC) denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-5). Thereafter, plaintiff timely sought judicial review in this Court.

        C.      **The ALJ's Decision**

        Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

        1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2018.

2

2. The claimant has not engaged in substantial gainful activity since January 1, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.).*

3. The claimant has the following severe impairments: congestive heart failure, carpal tunnel syndrome, sleep apnea, depression, anxiety, and post-traumatic stress disorder. (20 CFR 44.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that he can lift and carry 10 pounds frequently and 20 pounds occasionally, and can sit, stand, or walk for up to 6 hours in an 8 hour workday. He can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. The claimant can frequently balance, stoop, kneel, and crouch, but never crawl. The claimant can frequently handle and finger with the left upper extremity. The claimant can perform simple, routine tasks that can be learned after a short demonstration of within 30 days. The claimant would be off-task 5% of the work day in addition to regularly scheduled breaks due to symptoms of pain, PTSD, depression, and anxiety. The claimant must avoid work that requires travel to unfamiliar places. The claimant must avoid work that requires independent development of work strategies or identification of work place needs. The claimant can have occasional interaction with coworkers and no more than superficial interaction with the public. The claimant must avoid work that requires teamwork, such as on a production line. The claimant can engage in work that requires doing the same tasks every day with little variation in location, hours or tasks.

6. The claimant is unable to perform past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 28, 1964 and was 49 years old, which is defined  as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material because using the Medical-Vocational Rules as a framework supports that the claimant is "not disabled," whether or not he has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2014 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 7-24).

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes two arguments in support of his motion for judgment on the pleadings. First, plaintiff argues the ALJ's physical residual functional capacity (RFC) determination is not supported by substantial evidence because no medical opinion was relied upon. Second, the ALJ did not properly evaluate the Paragraph B criteria in his listing analysis for alleged mental impairments. (Dkt. No. 8 at 1 [Pl.'s Mem. of Law]).

### B.   Defendant's Arguments

In response, defendant argues the ALJ properly assessed plaintiff's physical RFC. (Dkt. No. 14 at 13 [Def.'s Mem. of Law]). Defendant also argues the ALJ properly evaluated plaintiff's mental impairments. (Dkt. No. 14 at 20).

## III.   RELEVANT LEGAL STANDARD

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial

evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme

Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482

U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

### A.  Physical RFC

The RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations."  20

C.F.R. § 416.945(a)(1). The ALJ is responsible for assessing plaintiff's RFC based on a review of

relevant medical and non-medical evidence, including any statement about what plaintiff can still

do, provided by any medical sources. *Id*. §§ 416.927(d), 416.945(a)(3), 416.946(c). Although the

ALJ has the responsibility to determine the RFC based on all the evidence in the record, the burden

is on plaintiff to demonstrate functional limitations that preclude any substantial gainful activity.

*Id*. §§ 416.912(c), 416.927(e)(2), 416.945(a), 416.946(c).

Plaintiff asserts the ALJ's physical RFC determination was the product of legal error

because the ALJ did not rely on opinion evidence in formulating the RFC determination. (Dkt. No.

8 at 1). Plaintiff argues the medical evidence revealed plaintiff was limited but it was not specific

enough to show plaintiff could perform the ALJ's limited range of light work. (Dkt. No. 21 at 29).

Plaintiff does not question the ALJ's mental RFC determination.

Contrary to plaintiff's assertion, an ALJ's RFC determination is not fatally flawed merely

because it was formulated absent a medical opinion.  The Second Circuit has held that where "the

record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted); *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). For the reasons discussed in this opinion, the ALJ has fulfilled his legal obligation.

An ALJ is not required to rely on any particular opinion in formulating the claimant's RFC. *See*, *e.g.*, *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018) ("Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in his decision," the ALJ is "entitled to weigh all of the evidence available to make a residual functional capacity finding that was consistent with the record as a whole."); *Johnson v. Colvin,* 669 F. App'x 44, 46 (2d Cir. 2016)(finding that where the record contained sufficient other evidence supporting the ALJ's determination and because the ALJ weighed all of that evidence when making his residual functional capacity finding, there was no 'gap' in the record and the ALJ did not rely on his own 'lay opinion' in declining to rely on any particular medical opinion). Rather, the ALJ is to assess the claimant's RFC "based on all the relevant evidence in your case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

In this case, based on the totality of the evidence, the ALJ determined a physical RFC limitation to:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that he can lift and carry 10 pounds frequently and 20 pounds occasionally, and can sit, stand, or walk for up to 6 hours in an 8 hour workday. He can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. The claimant can frequently balance, stoop, kneel, and crouch,

but never crawl. The claimant can frequently handle and finger with the left upper extremity. (Tr. 16).

The burden was on the claimant to prove RFC limitations exceeding those assessed by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). Plaintiff fails to demonstrate any additional limitations in this case.

In his decision, the ALJ first considered plaintiff's reported daily activities and the inconsistency of those activities with the degree of restriction alleged. (Tr. 17-19, 21). Plaintiff admitted in his written and testimonial statements that he lived alone and was able to engage in a range of independent daily activities, including cooking, cleaning, laundry, ironing, going out daily, shopping in stores, socializing, attending church each Sunday, and attending daily support groups. (Tr. 17-18, 530, 698-702). Plaintiff also reported during the course of treatment that he exercised 5 days per week for at least 30 minutes at a time and walked, bicycled, and lifted weights (Tr. 18-19, 21, 521-522, 1059, 1242). The ALJ reasonably found such activities detracted from plaintiff's allegations of disabling physical impairments. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (stating that the ALJ is to consider the claimants activities of daily living); *e.g.*, *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that the claimant's daily activities detracted from his allegations of disability).

The ALJ also evaluated each of plaintiff's severe physical impairments in detail, referencing multiple records and findings from the record that was over 600 pages at the time of the hearing. (Tr. 18-19, 21). In considering plaintiff's sleep apnea, the ALJ acknowledged his subjective complaints of poor sleep and daytime sleepiness early in the relevant period, but also noted a significant improvement in his condition after he was diagnosed with obstructive sleep apnea and prescribed a CPAP for nightly use in September 2016. (Tr. 18, 979, 1187, 1210). Thereafter plaintiff denied sleep disturbances and reported better energy and resolution of his

excessive daytime sleepiness. (Tr. 18, 982, 1016, 1076, 1084, 1233, 1240, 1249, 1252). The ALJ accordingly found such evidence to detract from plaintiff's allegations of disability. *See*, *e.g.*, *Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (finding that substantial evidence supported the ALJ's finding that the claimant showed improvement with treatment). Plaintiff cites no evidence suggesting additional limitations as a result of his sleep apnea.

In analyzing plaintiff's carpal tunnel syndrome, the ALJ recognized EMG/NCS studies of only mild findings on the left wrist. (Tr. 18, 1262-1263). ALJ Baird again appropriately noted the documented improvement in functioning and alleviation of pain with ice, injections, wrists splints and physical therapy. (Tr. 18, 985, 988, 994-95, 1227, 1004, 1227, 1254, 1260). Despite mild left wrist carpal tunnel syndrome, with treatment, physical examinations reflected normal reflexes, motor strength, and coordination. (Tr. 18, 982, 985, 1254, 1257). Plaintiff also disclosed that he could carry a gallon of milk and had no problems with activities such as getting dressed or putting his shoes on. (Tr. 18, 527-30). Finding the evidence inconsistent with the degree of impairment alleged, the ALJ nonetheless accounted for plaintiff's wrist impairment by finding him limited to a range of light work with a reduction in the ability to handle and finger with the left hand. (Tr. 18). Again, plaintiff cites no evidence in support of greater limitations.

The ALJ also discussed and considered evidence related to plaintiff's heart impairment. (Tr. 18, 21). He acknowledged it was congenital heart defect but observed plaintiff did not see a cardiologist as an adult until December 2015, almost two years after the alleged onset date. (Tr. 18, 518, 898). Plaintiff reported occasional chest pain but admitted to lifting weights despite symptoms. (Tr. 18, 521, 898). Cardiologist Dr. Neufeld diagnosed cardiomyopathy but noted a stress test was negative for ischemia, his hypertension was controlled with medication, and while an echocardiogram showed mitral valve regurgitation, he was asymptomatic. (Tr. 18, 894-97, 867,

1064). Dr. Neufeld advised only conservative treatment, prescribing Lisinopril and advising dietary restrictions, regular exercise, and smoking cessation. (Tr. 867). At a follow-up cardiology visit six months later, plaintiff said he continued to exercise at a gym without difficulties, and Dr. Gianfagna placed no restrictions on his activities. (Tr. 1059-60). Dr. Gianfagna continued to recommend the conservative treatment measures of medication, diet, exercise, and smoking cessation after a coronary angiography revealed a left ejection fraction of 40-45% and normal coronary arteries. (Tr. 1054, 1058).

In evaluating the functional effects of plaintiff's heart impairment, the ALJ also considered Dr. Gianfagna's March 2017 opinion[2] of marked limitations in physical activity due to fatigue, palpitations, dyspnea, and angina discomfort. (Tr. 18, 21, 1069). ALJ Baird appropriately found the brief, conclusory opinion inconsistent with the overall treatment record. (Tr. 18-19, 21, 1069). As noted by the ALJ, treatment notes from Dr. Gianfagna's clinic indicate that an echocardiogram performed just one week before the March 2017 opinion showed a left ejection fraction of 50-55%, in the "low normal" range, with increased left ventricular function and decreased mitral regurgitation (which was noted to be asymptomatic to begin with). (Tr. 19, 21, 1218, 1221). Furthermore, as observed by the ALJ,  the treatment record consistently documented normal cardiovascular functioning on physical examination and plaintiff generally denied fatigue and other potential cardiac symptoms. (Tr. 18-19, 21, 898, 905-06, 908-10, 985, 985, 995, 998, 1006, 1008, 1011, 1013, 1016, 1018, 1021, 1023, 1035, 1050, 1053, 1059, 1217, 1220, 1222, 1233, 1236, 1239, 1242, 1246, 1254, 1257). Despite complaints of chest pain in June and August 2017, Dr. Gianfagna found test results were normal and recommended no further diagnostic cardiac

---

[2] While the ALJ attributed that opinion to Dr. Gianfagna, the signature does not match that of Dr. Gianfagna appearing elsewhere in the record and seems to be that of another treatment provider, possibly his colleague Beverly A. Montalvo, N.P. (Tr. 1052, 1061, 1068-69).

evaluation, even noting plaintiff's continued physical activity. (Tr. 1217-1218). As discussed above, the plaintiff regularly engaged in weightlifting, going to the gym, walking, and a range of household chores. (Tr. 19, 21, 521-22, 698-702, 1059, 1217, 1242).

Accordingly, the ALJ found the record as a whole inconsistent with the check-box form completed by the cardiologist's office. (Tr. 21, 1069). *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."), 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Plaintiff makes no attempt to satisfy his burden of demonstrating additional RFC limitations. *See Smith*, 740 F. App'x at 726.

An RFC does not solely require medical opinion evidence. Consistent with obligations under the regulations governing the formulation of plaintiff's RFC, ALJ Baird expressly stated that he had based the RFC finding on the totality of the evidence. (Tr. 21). *Foley v. Comm'r of Soc. Sec.,* No. 1:18-CV-00512 EAW, 2019 WL 4386046, at *7 (W.D.N.Y. Sept. 13, 2019) ("Simply because the ALJ afforded no single opinion controlling weight does not mean ... that he substituted [his] own expertise of the medical proof for medical opinion."). Substantial evidence supports the ALJ's RFC and plaintiff failed to meet his burden to prove medical impairments with limitations greater than found by the ALJ.

Related to both the physical and mental limitations in the RFC, the ALJ did include the limitation that plaintiff would be off-task 5% of the work day in addition to regularly scheduled breaks due to symptoms of pain, PTSD, depression, and anxiety. (Tr. 16). Plaintiff summarily argues that such highly specific assessments are based on the ALJ's own surmise. (Dkt. No. 8 at 21). Plaintiff also states there is nothing in the record indicating plaintiff would be able to work at

the light level with this specific limitation. (*Id*.). First, an ALJ can find greater limitations than opined by a medical source. *Wilson v. Colvin*, No. 6:16-CV-06509-MAT, 2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017) ("Furthermore, the fact that an RFC assessment does not correspond exactly to a medical expert's opinion in the record does not mean that the RFC assessment is 'just made up.'"). Next, any error in providing for an off task limitation in the RFC was harmless.  If, as plaintiff urges, the ALJ was required to base each functional limitation of his RFC on a medical source opinion, the RFC in this case would be less restrictive because medical source opinions from mental health providers and the consultative examiner opined plaintiff had the attention and concentration to perform simple, routine, unskilled work with mild to moderate limitations in attention and concentration.  (Tr. 859, 901-902).

### B.  Mental Listing

Plaintiff argues the ALJ erred in considering the Paragraph B criteria, alternatively called the special technique, for plaintiff's depression, PTSD, and anxiety. (Dkt. No. 8 at 23). The Social Security Administration made changes to the listings used to evaluate claims involving mental disorders after the plaintiff applied for benefits. Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01 (Sept. 26, 2016)). These rules went into effect January 17, 2017, and courts are expected to apply those rules that were in effect at the time the ALJ issued the decision. *See Mattioli v. Berryhill*, No. 3:17-CV-1409(WIG), 2018 WL 5669163, at *3 (D. Conn. Nov. 1, 2018); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (effective Jan. 17, 2017). One of the rule changes pertained to the evaluation of the severity of mental impairments, or the "paragraph B criteria." *See* 20 C.F.R. 416.920a. This evaluation requires the "application of a 'special technique' at the second and third steps of the five-step framework, and at each level of administrative review." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).

Prior to January 17, 2017, the limitations in four broad functional areas were (1) "activities of daily living"; (2)"social functioning"; (3) "concentration, persistence, or pace"; and (3) "episodes of decompensation." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (2016). After January 17, 2017, the functional areas became (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. 416.920a(c)(3). In assessing these four areas, an ALJ must apply the degree of limitations using a five-point scale consisting of "none, mild, moderate, marked, and extreme." 20 C.F.R. 416.920a(c)(4). The regulations are clear that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. SSR 96-8p, 1996 WL 374184, at *4. In this case, the ALJ considered the appropriate criteria and found the record supported moderate limitations in the first three areas and mild limitations in the fourth. (Tr. 14-16).

Plaintiff argues the ALJ erred by citing to evidence from nonexamining state agency review physician Dr. Dipelou, which corresponded to the old criteria. (Dkt. No. 8 at 25). As plaintiff points out, Dr. Dipeolu correctly applied the "paragraph B" criteria in effect at the time of his March 2016 assessment. (Tr. 556). *Id.* at 23-25. Although no longer the correct criteria at the time of the hearing, the ALJ properly considered Dr. Dipeolu's opinion and accorded it little weight overall. (Tr. 14-16, 20). When referring to Dr. Dipeolu's findings in the "paragraph B" analysis, the ALJ cited other evidence of record and found limitations which were greater than those opined by Dr. Dipeolu. In the domain of understanding, remembering, or applying information, the ALJ cited Dr. Dipeolu's opinion only for the broad proposition that the state agency psychologist "reported no more than mild limitations." (Tr. 15, 556-57). The ALJ, however, did not accept that assessment

and found that the overall record supported moderate limitations in this domain, citing plaintiff's statements and the treatment record. (Tr. 14). The ALJ also relied on the assessment of consultative examiner Dr. Fabiano, observing that he recorded impaired recent and remote memory and below-average cognitive function, but an intact ability to understand, remember, and carry out simple directions and instructions, perform tasks independently, and learn new tasks. (Tr. 14, 20, 859).

In the domain of interacting with others, the ALJ accurately noted that Dr. Dipeolu "reported mild limitations in maintaining social functioning." (Tr. 15, 556). The ALJ clearly identified the state agency psychologist's assessment under the language of the old "paragraph B" criteria (maintaining social functioning) to the extent relevant to the similar new criteria (interacting with others). The ALJ did not adopt Dr. Dipeolu's assessment but found that the record supported a moderate limitation. (Tr. 15). In support of that finding, the ALJ considered plaintiff's statements attesting to a range of social interactions and his ability to successfully participate in individual medical treatment and group therapy, as well as Dr. Fabiano's assessment of a moderate limitation relating adequately with others despite a cooperative manner of relating and social skills on examination. (Tr. 15, 701-05, 857-59).

In the domain of concentrating, persisting, or maintaining pace, the ALJ observed that Dr. Dipeolu reported mild difficulties in the claimant's ability to maintain concentration, focus, attention and pace. (Tr. 15, 556). Again, however, he found that the overall record supported a moderate limitation, citing plaintiff's reported problems and Dr. Fabiano's assessment of moderate difficulties in this area. (Tr. 15, 522, 533-39, 859).

Lastly, in the domain of adapting or managing oneself, ALJ Baird found that Dr. Dipeolu "reported no significant limitations in this area." (Tr. 15, 556). While the former "paragraph B" criteria Dr. Dipeolu considered did not include this domain, it is clear in context that the ALJ

considered the psychological consultant's assessment of a mild limitation in the similar domain of activities of daily living. (Tr. 15, 556). In evaluating the domain of adapting and managing oneself, the ALJ placed appropriate emphasis on plaintiff's admitted ability to perform a range of daily activities, including tending to his personal care, preparing simple meals, performing household chores, utilizing transportation, and shopping in stores. (Tr. 15, 522, 700-05). The ALJ also considered plaintiff's reported difficulty handling stress and changes in routine, treatment records, however showing good insight and judgment, his ability to maintain sustained remission from alcohol and drug abuse, and Dr. Fabiano's finding of moderate limitations in appropriately dealing with stress. (Tr. 15, 859, 1179-80, 1198, 1210, 1230, 1254). Based on the entire record, the ALJ assessed a mild limitation in this area. (Tr. 15).

Notably, consultative examiner Dr. Fabiano did not frame his evaluation using either the old or new criteria. (Tr. 859). Any argument by plaintiff that an opinion must frame its findings to match agency regulations is unavailing. When considering the "paragraph B" criteria, the ALJ is to consider "all of the relevant medical and non-medical evidence in your case record to evaluate your mental disorder." 20 CFR Pt. 404, Subpt. P, App'x 1 § 12.00(F)(3).

**ACCORDINGLY, it is**

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No.8) is

    **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is

    **GRANTED**.

Dated:  December 8, 2020            _J. Gregory Wehrman_
Rochester, New York             HON. J. Gregory Wehrman
                            United States Magistrate Judge